UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PETER ALFIERI

v. C.A. No. 06-510-ML

RUTH A. KOELLE

**MEMORANDUM AND ORDER**

Plaintiff, Peter Alfieri, ("Plaintiff") originally filed this matter in Rhode Island Superior Court and it was subsequently removed by Defendant, Ruth A. Koelle, ("Defendant") to this Court. The matter is before the Court on Defendant's motion to dismiss and Plaintiff's motion to remand. For the reasons stated herein, the Court denies Plaintiff's motion to remand and grants Defendant's motion to dismiss.

## I. Background

Plaintiff was a tenured professor of foreign languages at Roger Williams University ("Roger Williams"). Defendant was (and apparently still is) the Dean of the College of Arts and Sciences at Roger Williams. As Dean, Defendant was Plaintiff's second level supervisor. Plaintiff's employment with Roger Williams was subject to a collective bargaining agreement ("CBA"). In January 2005, Roger Williams terminated Plaintiff's employment based upon Defendant's negative evaluations of Plaintiff's "self-study."[1] Complaint at ¶ 5.

---

[1]Plaintiff's termination is the subject of an ongoing arbitration proceeding.

Plaintiff alleges a single count of tortious interference with contract against Defendant. Plaintiff's complaint includes eight separate factual averments in support of Plaintiff's claim that Defendant "intentionally and without justification . . . interfer[ed] with [P]laintiff's contract with" Roger Williams "thereby causing . . . termination of [P]laintiff's employment, in violation of his contractual rights and his grant of tenure." Id. at ¶ 6.

## II. Motion to Remand

The Court must first consider whether it has subject matter jurisdiction over this dispute. Defendant removed this matter to this Court on the basis of federal question jurisdiction. The well-plead complaint rule prohibits the exercise of federal question jurisdiction "if no federal claim appears within the four corners of the complaint." BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, 132 F.3d 824, 831 (1st Cir. 1997). A defense of preemption by federal law does not ordinarily give rise to federal question jurisdiction. Id. However, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. . . ." Id. (internal quotation marks and citation omitted). Consequently, the complete preemption doctrine is an exception to the well-plead complaint rule and can convert "an ordinary state common law complaint into one stating a federal claim." Warner v. Atkinson Freight Lines Corp., 350 F. Supp. 2d 108, 114 (D. Me. 2004) (internal quotation marks and citation omitted).

Section 301 of the Labor Management Relations Act confers federal court jurisdiction over suits for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. . . ." 29 U.S.C. § 185(a). "[T]he preemptive force

of § 301 [of the Labor Management Relations Act] is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. The upshot is that any such suit must be regarded as purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." BIW Deceived, 132 F.3d at 831 (internal quotation marks and citation omitted). The Court must look "beneath the face of the complaint" to determine if complete preemption renders a claim truly federal in nature. Id.

Defendant, as the removing party, bears the burden of showing that the "federal district court would have had original jurisdiction of the case had it been filed in that court." Id. at 824 (internal quotation marks and citation omitted); see also Warner, 350 F. Supp. 2d at 114. To meet this burden, Defendant must make a "colorable" showing of a federal question within a field in which state law is completely preempted. BIW Deceived, 132 F.3d at 832; see also Warner, 350 F. Supp. 2d at 114. In ruling on Plaintiff's motion to remand, the Court's task is limited to determining whether it has the authority to proceed by deciding whether the complaint, on its face, asserts a colorable federal claim. Id. The "standard for finding that a plaintiff's . . . state law claim[] raise[s] [a] federal question[] under the complete preemption doctrine is lower than the standard for finding that the claim[] [is], in fact, preempted." Warner, 350 F. Supp. 2d at 117. The colorabilty test "requires only that it be '<u>plausible</u>' that the resolution of the claim depends upon the meaning of a collective bargaining agreement." Id. at 118 (emphasis added).

Plaintiff alleges that Defendant interfered with the CBA[2] by: (1) requiring Plaintiff to submit a self-study report "before the time stipulated in Article VIII of the [CBA]"; (2) denying Plaintiff's "reasonable requests" to teach advanced courses which would have allowed him to "satisfy evaluative criteria in preparing the self-study"; (3) "unilaterally overload[ing] [P]laintiff with an additional class, without reasonable notice" rendering it "more difficult" for Plaintiff to complete the self-study; (4) providing Plaintiff with "erroneous instruction as to the preparation of the self-study" and "requiring [P]laintiff to follow a self-study format which was not in accordance with the [CBA]"; (5) refusing to assist Plaintiff in preparing the self-study "in violation of the [CBA]"; (6) "failing to present the self-study report to the Faculty Review Committee as required by the [CBA]" and "instead performing an unilateral evaluation . . all in violation of the [CBA]"; (7) making false and disparaging representations relating to the self-study for purposes of causing Plaintiff's termination; and (8) performing "her negative re-evaluation by focusing on areas in violation of [the CBA] criteria pertaining to re-evaluations." Complaint at ¶ ¶ 7(a)-(h).

Plaintiff's complaint charges that Roger Williams terminated him based upon Defendant's negative evaluation of Plaintiff's self-study. Plaintiff's complaint <u>specifically</u> refers to an alleged breach of the CBA in five of the eight alleged instances of interference. Seven of the eight allegations refer to the self-study process. Plaintiff also avers that Defendant performed his re-evaluation by focusing on areas in violation of the CBA criteria for re-evaluations.

Defendant is Plaintiff's second level supervisor. As such, she is an agent of his employer,

---

[2]Plaintiff's complaint refers to "Plaintiff's contract," "contractual rights," "the contract," and "contractual provisions." Plaintiff admitted at oral argument on the motions that these references refer to the CBA.

Roger Williams. It is certainly plausible that the resolution of Plaintiff's claim would depend upon the meaning of the CBA to determine the extent of Defendant's supervisory status. Thus, there is a "seemingly valid or genuine" question concerning whether Plaintiff's claim depends upon the CBA. BIW Deceived, 132 F.3d at 832 n.4 (citation omitted). Additionally, Plaintiff's allegations of Defendant's interference repeatedly refer to the CBA. Plaintiff's claim is largely dependent on Defendant's purported erroneous implementation of an evaluative self-study process, a process governed by the CBA. Complaint at ¶ ¶ 7(a)-(f); see generally Warner, 350 F. Supp. 2d at 120. "[T]he nexus between the CBA and Plaintiff['s] claim is simply too strong to withstand a test that requires the Court to find only a colorable federal claim." Id. at 120-21. It is plausible that, in prosecuting his claim, Plaintiff will address Defendant's supervisory status, the requirements of the self-study process, and the criteria for re-evaluations, which will in turn require the Court to interpret the CBA. Plaintiff's complaint, therefore, raises a colorable federal question under section 301 of the Labor Management Relations Act. Consequently, Plaintiff's motion to remand is denied.

## III. Motion to Dismiss

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the well-pled facts must be taken as true and all reasonable inferences must be drawn in favor of the plaintiff. Figueroa v. Rivera, 147 F.3d 77 (1st Cir. 1998). The Court exempts those "facts" which "have since been conclusively contradicted by plaintiff['s] concessions or otherwise, and likewise eschew[s] any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (internal quotation marks and citation omitted). A court should not grant a motion to dismiss unless "it appears to a certainty

that the plaintiff would be unable to recover under any set of facts." Roma Constr. Co. v. aRusso, 96 F.3d 566, 569 (1st Cir. 1996).

Section 301 of the Labor Management Relations Act empowers federal courts to develop federal common law to effectuate the purposes of section 301. Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21 (1st Cir. 1997). The authority to develop federal common law has formed a "complex" jurisprudence of preemption. Lyndon v. Boston Sand & Gravel, 175 F.3d 6, 10 (1st Cir. 1999). "[L]abor law preemption casts a relatively wide net." Flibotte, 131 F.3d at 26. The basic test of preemption is that section 301 preempts a state law claim if the court, "in passing upon the claim, would be required to interpret the collective bargaining agreement." Id. This test "boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." Id. (emphasis added).

A state law claim can depend upon the meaning of a collective bargaining agreement in two ways. Id. First, the claim would depend upon the meaning of a collective bargaining agreement if the claim "alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement." Id.; see also United Steelworkers v. Rawson, 495 U.S. 362, 369 (1990). As such, Plaintiff's claim is preempted if the duty allegedly breached does not exist independent of the CBA. Warner, 350 F. Supp. 2d at 116. Second, a claim depends upon the meaning of a collective bargaining agreement if the claim's resolution "arguably hinges upon an interpretation" of the collective bargaining agreement. Flibotte, 131 F.3d at 26. If a state-law claim depends upon a collective bargaining agreement in either way, it is preempted. Id.

Courts must be wary, however, as "purely factual questions about an employee's conduct

or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." Id. (internal quotation marks and citation omitted). Section 301 does not preempt nonnegotiable rights conferred on employees by state law. Id. Moreover, the "bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Lydon, 175 F.3d at 10 (internal quotation marks and citation omitted). Courts confronted with the question of section 301 preemption must identify the line between the need for "mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims." Id. Preemption requires a "real interpretive dispute." Id. (internal quotation marks and citation omitted). Unfortunately, the line between referring to a CBA and interpreting it "may be somewhat hazy." Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 749 (9th Cir. 1993). The preemptive effects of federal labor law must be decided on a case-by-case basis. Warner, 350 F. Supp. at 116.

Defendant argues that Plaintiff's claim is preempted because it both alleges breaches of the CBA and invites the Court to interpret the CBA. Plaintiff avers that the claim is not preempted because the Court need not interpret the CBA to adjudicate the claim. Rather, Plaintiff argues, that the Court must merely refer to or consult the CBA, and not interpret it, to analyze his claim. Plaintiff avers that his claim focuses solely on Defendant's conduct and does not require the Court to interpret the CBA. Plaintiff's argument misses the mark in two important ways. First, Plaintiff's argument ignores the significance of his relationship to Defendant: Defendant was Plaintiff's supervisor. Plaintiff's allegations against Defendant clearly flow from Defendant's responsibilities as a supervisor – an agent of Plaintiff's employer, Roger Williams. Magerer v.

John Sexton & Co., 912 F.2d 525 (1st Cir. 1990). "As such, the [D]efendant supervisor's actions were governed by the collective bargaining agreement, and evaluation of those actions, therefore, entail[] interpretation of the same." Acciavatti v. Professional Services Group, Inc., 982 F. Supp. 69, 76 (D. Mass. 1997); see also Kneeland v. Pepsi Cola Metropolitan Co., 605 F. Supp. 137, 139 (D. Mass. 1985) (supervisory employees were acting as agents of the employer in administering a collective bargaining agreement). "The difference between suing your employer for breach of contract and calling it tortious interference, and suing your supervisor[] for tortious interference, is one of form rather than substance." Kimbro v. Pepsico, Inc., 215 F.3d 723, 727 (7th Cir. 2000). Second, the majority of Plaintiff's factual assertions of wrongdoing by Defendant, as outlined in the complaint, specifically refer to alleged violations of the CBA. Complaint at ¶ ¶ 7(a), (d), (e), (f), (h).

The Court must look to the "essence of the [P]aintiff's claim, in order to determine whether . . . [P]laintiff is attempting to disguise what is essentially a contract claim as a tort." DeCoe v. General Motors Corp., 32 F.3d 212, 216 (6th Cir. 1994). Although Plaintiff's complaint alleges only one legal claim, i.e., tortious interference with contract, he makes eight separate factual averments. Those eight factual averments can be separated into two categories for purposes of preemption analysis: (1) those that actually allege a violation of the CBA, and (2) those that clearly require interpretation of the CBA.

A. Allegations of violations of the CBA

Plaintiff alleges, inter alia, that Defendant interfered with the CBA by: (1) requiring Plaintiff to submit a self-study report "before the time stipulated in Article VIII of the [CBA]," (2) providing Plaintiff with "erroneous instruction as to the preparation of the self-study" and

"requiring Plaintiff to follow a self-study format which was not in accordance with the [CBA]," (3) refusing to assist Plaintiff in preparing the self-study "in violation of the [CBA]," (4) "failing to present the self-study report to the Faculty Review Committee as required by the [CBA]" and "instead performing an unilateral evaluation . . all in violation of the [CBA]," and (8) performing "her negative re-evaluation by focusing on areas in violation of [the CBA] criteria pertaining to re-evaluations." Complaint at ¶ ¶ 7(a), (d), (e), (f), (h) (emphasis added).

First, it is clear to the Court that the duties Defendant purportedly breached "derive[] from the employment relationship as defined in the collective bargaining agreement." Flibotte, 131 F.3d at 27. Defendant, as Plaintiff's supervisor, was acting on behalf of Plaintiff's employer, Roger Williams. As such, Defendant's actions were actions of Plaintiff's employer. See Kneeland, 605 F. Supp. at 139. Thus, the Court's analysis of Plaintiff's claim would certainly require an interpretation of the employment relationship as governed by the CBA, and in particular Defendant's supervisory authority. See Fleming v. U.P.S. Inc., No. Civ. A. 4:05CV8LN, 2005 WL 3240690 at *3 (S.D. Miss. Nov. 29, 2005) ("[p]laintiff's allegations directly relate to plaintiff's employment and [his employer's] decision to terminate him based upon [his supervisor's] recommendation and thus directly implicate his rights under the collective bargaining agreement"); see also Flibotte, 131 F.3d at 26 (claim preempted "if its resolution arguably hinges upon an interpretation of the collective bargaining agreement").

> [T]he question of whether [Defendant] 'interfered'. . . would require [the Court] to delve into the rights and responsibilities of . . . [a] supervisor[] under the CBA. Undoubtedly, the supervisor would claim that [her] actions were consistent with [her] duties as a supervisor. . . . Congress intended such questions to be addressed within the realm of federal, not state, law.

Mattis v. Massman, 355 F.3d 902, 907 (6th Cir. 2004).

Second, and more important, the complaint clearly alleges that Defendant breached a duty under the CBA in at least five instances. "[A] state-law tort action against an employer may be pre-empted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement." Rawson, 495 U.S. at 369. In essence, Plaintiff is alleging that his employer, through his supervisor, violated the CBA. To the extent Plaintiff's complaint alleges a breach of duty under the CBA, it is clearly preempted. Flibotte, 131 F.3d at 26 (claim preempted if "it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement"). If Defendant, and by extension Roger Williams, "failed to perform a duty . . . arising out of the [CBA] . . . [c]learly, the enforcement of [the CBA] and the remedies for its breach are matters governed by federal law." Rawson, 492 U.S. at 371. It is significant that the allegations in Plaintiff's complaint specifically refer to the CBA as the source of the purported duties that Defendant breached. See generally Stringer v. National Football League, ____ F. Supp. 2d _____, 2007 WL 520618 at *9 (S.D. Ohio 2007) (noting that the complaint in Rawson specifically referred to the CBA). "The . . . contract that [Plaintiff] alleges was breached is the collective bargaining agreement. Thus, this claim is clearly preempted under § 301." Oberkramer v. IBEW-NECA Service Center, Inc., 151 F.3d 752, 756 (8th Cir. 1998). "Clearly, any state law claim specifically alleging breach of a collective bargaining agreement will be preempted." Person v. Bell Atlantic-Virginia, Inc., 993 F. Supp. 958, 960 (E.D. Va. 1998). Plaintiff's claims of interference based upon the allegations contained in paragraphs 7 (a), (d), (e), (f), and (h) of the complaint are preempted because they clearly allege a breach of a duty created by the CBA. Flibotte, 131 F.3d at 26.

B. Allegations that Clearly Require an Interpretation of the CBA

Plaintiff's remaining allegations contained in paragraphs 7 (b), (c), and (g) of the complaint all deal with the self-study process. Plaintiff avers that Defendant interfered with the CBA by (1) denying Plaintiff's "reasonable requests" to teach advanced courses which would have allowed him to "satisfy evaluative criteria in preparing the self-study report," (2) "unilaterally overload[ing] [P]laintiff with an additional class, without reasonable notice" rendering it "more difficult" for Plaintiff to complete the self-study; (3) making false and disparaging representations relating to the self-study for purposes of causing Plaintiff's termination. Complaint ¶ ¶ 7(b), (c), (g). In essence, Plaintiff alleges that Defendant's actions made it more difficult or impossible to complete the self-study process. Plaintiff's allegations with respect to the self-study process invite the Court to determine whether Defendant tortiously interfered with a process created and governed by the CBA.[3]

The Court would need to interpret Article VIII(B)(2) ("Evaluation Criteria and the Comprehensive Self-Study") of the CBA to determine if Defendant's actions caused Plaintiff to fail to meet the "evaluative criteria" in preparing the self-study. Not only does Article VIII identify the specific evaluative criteria that may be used in performance assessment, it also states that for tenured faculty "[i]t is recognized that not all of the [criteria listed in the CBA] apply to all faculty being evaluated. Other relevant criteria may be added as appropriate." CBA Article VIII(B)(2) (emphasis added). The CBA recognizes that "individual, specific criteria differ in importance within schools and departments" and that "the current evaluative criteria . . . as set forth herein may

[3]In ruling on the motion, the Court has reviewed the CBA. See Beddal v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (when a complaint's factual allegation are clearly linked to a document, the authenticity of which is not challenged, the document merges into the pleadings and a trial court may review it in deciding a motion to dismiss).

be satisfied in a variety of ways. . . ." Id. Thus, to analyze Plaintiff's allegation, the Court would need to identify the permissible criteria for Plaintiff's evaluation, which would appear to be no small task, and then determine if Defendant's actions somehow impeded Plaintiff from completing the particular self-study process applicable to Plaintiff. This would clearly require the Court to interpret the CBA. Likewise, to determine whether Defendant made it more difficult for Plaintiff to complete his self-study by "overloading Plaintiff with an additional class," the Court would need to interpret the CBA to determine the extent of the self-study Plaintiff was required to complete, and whether Defendant's actions tortiously interfered with Plaintiff's CBA-mandated requirements.

Plaintiff also avers that Defendant made false and disparaging representations relating to the self-study process for purposes of causing his termination. In order to evaluate this claim, Plaintiff would have to identify Defendant's representations and the Court would need to determine whether they were false and disparaging with respect to the self-study process. The Court would need to identify the specific self-study process applicable to Plaintiff and then evaluate Defendant's statements in light of the self-study process. It is clear that in order to perform this task the Court would need to interpret the provisions of the CBA governing the self-study process.

## C. State Law

Under Rhode Island law a plaintiff asserting a cause of action for tortious interference with contractual relations must show (1) the existence of a contract, (2) the alleged wrongdoer's knowledge of the contract, (3) his or her intentional interference, and (4) damages. Belliveau Building Corporation v. O'Coin, 763 A.2d 622 (R.I. 2000). The interference need not result in

breach; any "act which retards, makes more difficult, or prevents performance, or makes performance less valuable, may . . . constitute tortious interference." New England Multi-Unit Housing Laundry Ass'n v. Rhode Island Housing and Mortgage Finance Corp., 893 F. Supp. 1180, 1192 (D.R.I. 1995). "Even where the defendant asserts that it was merely exercising its own contractual rights, its actions, if found to be unreasonable, can constitute improper interference . . . ." Id. The injured party must show legal malice – the "intent to do harm without justification. . . ." Belliveau, 763 A.2d at 627.

> [T]o establish a prima facie case of intentional interference with contract, aggrieved parties must allege and prove not only that the putative tortfeasor[] intended to do harm to the contract but that they did so without the benefit of any legally recognized privilege or other justification. Upon such a showing, the alleged offender[] would have the opportunity – and the burden – to prove that the contractual interference was indeed justified.

Id. (emphasis added).

In order to succeed on his state-law claim, Plaintiff would have to prove that Defendant intended to do harm without justification. Id. The reasonableness of Defendant's actions would be reviewed in light of the CBA. The parties' rights and obligations under the CBA are central to the inquiry into Defendant's justification for her actions.

> "In state tort law terms, without reviewing the CBA it would not be possible to determine whether [P]laintiff was treated wrongfully or whether [D]efendant['s] actions fell within the bounds of a pertinent contractual privilege, justification, [or were reasonable] . . . matters essential to the resolution of a claim for tortious interference . . . ."

Cumptson v. Dyncorp Technical Services, Inc., 76 F. App'x. 861, 862 (10th Cir. 2003); see generally Belliveau, 763 A.2d at 627; see also Beidleman v. The Stroh Brewery Co., 182 F.3d 225 (3d Cir. 1999) (finding preemption of tortious interference with contractual relations claim where breach was not necessary for recovery on state-law interference claim).

The Court concludes that Plaintiff's allegations are "inextricably intertwined" with the CBA. Magerer, 912 F.2d at 531 (internal quotation marks and citation omitted). Consequently, Plaintiff's claim is preempted as it "arguably" alleges breaches of, and invites the Court to interpret, the CBA. Flibotte, 131 F.3d at 26.

## IV. Conclusion

For the reasons set forth herein, Plaintiff's motion to remand is DENIED and Defendant's motion to dismiss is GRANTED.

SO ORDERED

Mary M. Lisi
Chief United States District Judge
March 29, 2007